## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT WORTHINGTON, on Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BAYER HEALTHCARE, LLC.<br><br>Defendant. | Civil Action No. 11-2793(ES) |
| DINO RIKOS, On Behalf Of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BAYER HEALTHCARE, LLC,<br><br>Defendant | Civil Action No. 11-3017(ES) |
| TROY YUNCKER, on Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BAYER HEALTHCARE, LLC.<br><br>Defendant. | Civil Action No. 11-3299(ES) |

-----------------------------------------------------------------------------------------------------------

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S AND PROPOSED INTERVENOR STANLEY'S MOTIONS TO DISMISS

-----------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

## **TABLE OF CONTENTS**

Table Of Authorities ..............................................................................................ii

Preliminary Statement.............................................................................................1

Legal Argument

I      The First-Filed Rule Does Not Apply To Plaintiffs' Claims ................................3

      a)    Application Of The First-Filed Rule....................................................3

      b)    The First-Filed Rule Does Not Apply Because The Claims And Parties Differ .......3

      c)    Bayer Is Attempting To Forum Shop And Plaintiff Shop ........................................8

II     Bayer's Motion To Dismiss Under Rule 12(b)(6) And 9(b) Should Be Denied .................18

      a)    Standards For Motion To Dismiss ........................................................18

      b)    It Is Not Necessary To Plead Ascertainable Loss With Specificity..........................20

      c)    Plaintiffs' Substantive Claims Are Pleaded With Specificity....................................23

III    Plaintiffs' Unjust Enrichment Claims Are Properly Pleaded ................................26

      a)    Plaintiffs Plead Appropriate Unjust Enrichment Claims ..........................................26

      b)    It Is Not Necessary To Have Direct Dealings
          To Assert An Unjust Enrichment Claim...............................................................27

IV     Bayer's Motion To Dismiss Plaintiffs' Breach Of Warranty Claims Should Be Denied......29

Conclusion .............................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Alloway v. General Marine Industries*, 149 N.J. 620 (1997)........................................................ 26
*Alvarez v. Gold Belt, LLC*, 2009 WL 1473933 (D.N.J. 2009).................................................. 14, 15
*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ............................................................................................ 18
*Assocs. Home Equity Services v. Troup*, 343 N.J.Super. 254 (App.Div. 2001) ........................... 23
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 18
*Benefit Trust Life Insurance Co. v. Union Nat'ional Bank of Pittsburgh*,
    776 F.2d 1174 (3d Cir. 1985)........................................................................................................ 27
*Berry v. Mega Brands Inc.*, 2009 WL 233508 (D.N.J. 2009).......................................................... 21
*Carton v. Choice Point, Inc.,* 482 F. Supp. 2d 533 (D.N.J. 2007)................................................. 23
*Catanese v. Unilever*, 2011 WL 1206197 (D.N.J. 2011).................................................................... 7
*Christidis v. First Penn. Mortgage Trust*, 717 F.2d 96 (3d Cir. 1983)....................................... 19
*Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37 (3d Cir. 1980)................................. 3
*Cox v. Sears Roebuck & Co.,* 138 N.J. 2 (1994)......................................................................... 8, 23
*Coyle v. Hornell Brewing Co.*, 2010 WL 2539386 (D.N.J. 2010)................................................... 29
*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941)....................................................... 4
*EEOC v. University of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988)................................ 3, 4, 8, 14
*Elias v. Unger's Food Products*, 252 F.R.D. 233 (D.N.J. 2008)................................................... 22
*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)........................................................................ 27
*Ford Motor Credit Co. v. Chiorazzo*, 529 F.Supp.2d 535 (D.N.J. 2008)..................................... 19
*Franulovic v. Coca-Cola*, 2007 WL 31666953 (D.N.J. 2007)......................................................... 20
*Haag v. Janney Montgomery Scott, LLC*, 2007 WL 1240206 (E.D. Pa. 2007)............................ 14
*In re Ace Ltd. Securities Litigation*, 370 F.Supp.2d 1353 (J.P.M.L. 2005) ................................ 10
*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig*, 424 F.Supp. 504 (J.P.M.L. 1976) .... 10
*In re Circular Thermostat Antitrust Litigation*, 370 F.Supp.2d 1355 (J.P.M.L. 2005) ............ 10
*In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation*,
    368 F.Supp.2d 1354 (J.P.M.L. 2005).......................................................................................... 10
*In re Diet Drugs*, 283 F.3d 220 (3d Cir. 2002).................................................................................... 6
*In re Ford Motor Co. E-350 Van Products Liab.ility Litigation (No. II)*,
    2010 WL 2813788 (D.N.J. 2010) ................................................................................................. 27
*In re Hypodermic Products Antitrust Litigation*, 2007 WL 1959225 (D.N.J. 2007)................... 27
*In re Hypodermic Products Antitrust Litigation*, 408 F.Supp.2d 1356 (J.P.M.L. 2005) ............. 11
*In re Insurance Brokerage Antitrust Litigation*, 360 F.Supp.2d 1371 (J.P.M.L. 2005) ............. 11
*In re K-Dur Antitrust Litigation*, 338 F.Supp.2d 517 (D.N.J. 2004) ............................................ 27
*In re Mercedes-Benz Tele Aid Contract Litig*, 257 F.R.D. 46 (D.N.J. 2009) ............... 9, 14, 22, 26
*In re Mercedes-Benz Tele Aid Contract Litigation*, 267 F.R.D. 113 (D.N.J. 2010)..................... 14
*In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198 (3d Cir. 2002) ..... 19
*In re TJX Customer Data Security Breach Litigation*, 493 F.Supp.2d 1382 (J.P.M.L. 2007) ..... 10
*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995) ................................................ 12
*Kaiser Found.ation Health Plan, Inc. v. Medquist, Inc.*, 2009 WL 961426 (D.N.J. 2009).......... 27
*Kedia v. Jamal*, 2007 WL 1239202 (D.N.J. 2007) ............................................................................. 3
*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 383 U.S. 487 (1941)...................................... 9
*Lamont v. Opta Corp.*, 2006 WL 1669019 (App.Div. 2006)........................................................... 20
*Lum v. Bank of Am.erica*, 361 F.3d 216 (3d Cir. 2004)................................................................... 19

*Maniscalco v. Brother International Corp. (USA)*, 627 F.Supp.2d 494 (D.N.J. 2009)............... 20

*Morey v. NextFoods, Inc.*, 2010 U.S. Dist. LEXIS 67990 (S.D. Cal. June 7, 2010) ................... 22

*Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, 2007 WL 1756027 (D.N.J. 2007) ............. 19

*Parker v. Howmedica Osteonics Corp.*, 2008 WL 141628 (D.N.J. 2008) ................................. 22

*Perkins v. DaimlerChyrsler Corp.* 282 N.J.Super. 99 (App.Div. 2006)...................................... 20

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)................................................... 18

*Richards v. Jefferson County*, 517 U.S. 793 (1996) ..................................................................... 6

*Seville Indus.trial Machinery Corp. v. Southmost Machinery Corp.*,
    742 F.2d 786 (3d Cir. 1984)............................................................................................ 18, 24

*Smith v. Bayer Corp.*, 131 S.Ct. 2368 (2011) ................................................................... passim

*Solo v. Bed, Bath & Beyond, Inc.*, 2007 WL 1237825  (D.N.J. 2007) ....................................... 22

*South Broward Hospital District v. Medquist, Inc.*, 516 F.Supp.2d 370 (D.N.J. 2007). ............. 19

*State v. Hudson Furniture Co.*, 165 N.J.Super. 516 (App.Div. 1979)........................................ 23

*Strzakowlski v. General Motors Corp.*, 2005 WL 2001912 (D.N.J. 2005) ................................ 29

*Talalai v. Cooper Tire & Rubber Co*., 360 N.J. Super. 547 (Law Div. 2001) ............................ 20

*Taylor v. JVC Americas Corp.*, 2008 WL 2242451 (D.N.J. 2008)............................................ 29

*Taylor v. Sturgell*, 553 U.S. 880 (2008)......................................................................... 4, 6, 15

*Thiedman v. Mercedes-Benz USA LLC*, 183 N.J. 234 (2005) .................................................. 20

*Union Ink Co. v. AT&T Corp.*, 352 N.J.Super. 617 (App.Div. 2002) ...................................... 20

*Varacallo v. Mass.achusetts Mut. Life Ins. Co.*, 332 N.J. Super. 31 (App. Div. 2000)............... 21

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (1994) ............................................................. 26

**Statutes**

28 U.S.C. § 1404............................................................................................................... 8, 11

28 U.S.C. §1407(a) ......................................................................................................... 10, 11

**Rules**

Fed.R.Civ.P. 9 ......................................................................................................................... 18

**Treatises**

MANUAL FOR COMPLEX LITIGATION (4th Ed.), § 20.131 .......................................................... 10

**PRELIMINARY STATEMENT**

Defendant Bayer Healthcare LLC ("Bayer") seeks to dismiss these proposed class actions on two bases.  First, it contends that the New Jersey complaints should be dismissed under the first-filed rule, since a similar action was filed earlier in the United States District Court for the Southern District of California (*Stanley v. Bayer Healthcare, LLC*, No. 3:11-cv-00862 (S.D. Cal.)).  It also contends that the New Jersey Plaintiffs have failed to adequately plead their claims.  After Bayer filed its motion to dismiss, the California Plaintiff, Diana Stanley, moved to intervene in this action in order to also move to dismiss the New Jersey Plaintiffs' complaints under the first-filed rule.

For the reasons set forth below, Bayer's and proposed intervenor Stanley's motions to dismiss should be denied.[1]  The first-filed rule does not apply to these actions because they are between different parties and the cases assert different claims. Further, Bayer is attempting to forum shop and plaintiff shop, and both Bayer and Stanley are attempting to subvert the procedures of the Judicial Panel for Multidistrict Litigation, which is the appropriate court for deciding where to litigate cases involving common questions but filed in different districts.[2]

Bayer's arguments regarding the adequacy of Plaintiffs' claims are also meritless.  The pending actions set forth claims with respect to the marketing and sale of Bayer's Phillips Colon Health Probiotic products ("Phillips Colon Health").  As is detailed in the respective complaints, each of which are replete with verbatim reproduction of Bayer's alleged misrepresentations,

---

[1]    Plaintiffs address Stanley's proposed motion to dismiss in this brief, since the procedure envisioned by Stanley's motion to intervene, to be granted leave to intervene then file a separate motion to dismiss, is an unreasonable duplication of effort and waste of time.  Plaintiffs separately address Stanley's motion to intervene.

[2]    Alternatively, pursuant to 28 U.S.C. §1404, Bayer could move to transfer *Stanley* to New Jersey where the actions might then be coordinated.  Bayer is headquartered in this District and, thus, *Stanley* "might have have been brought" in this District.  28 U.S.C. §1404(a).

Bayer markets Phillips Colon Health as  being proven to improve all person's digestive health and immune systems as a result of being infused with purportedly "probiotic" bacteria.  In fact, there is no adequate scientific evidence to support Bayer's claims about Phillips Colon Health, and the few studies that do exist and were properly conducted contradict Bayer's marketing claims.  Based on Bayer's claims about purported digestive and immune benefits, Bayer is able to charge a premium price for Phillips Colon Health.

**LEGAL ARGUMENT**

**I**

**THE FIRST-FILED RULE DOES NOT
APPLY TO PLAINTIFFS' CLAIMS**

Bayer seeks to dismiss these actions under the first-filed rule because a similar action was previously filed in the Southern District of California.  The first-filed rule does not apply, however, because neither the parties in the different actions nor the claims are the same.  As a result, Bayer's motion to dismiss based upon the first-filed rule should be denied.

**a)**      **Application Of The First-Filed Rule**

The first-filed rule gives the district court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues before another district court. *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988).  The Third Circuit interprets the first-filed rule narrowly, applying it only to "truly duplicative" proceedings. *Kedia v. Jamal*, 2007 WL 1239202, at *3 (D.N.J. 2007).[3]  "It is important, however, that only truly duplicative proceedings be avoided. When the claims, parties, or requested relief differ, deference may not be appropriate."  *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980).

**b)**      **The First-Filed Rule Does Not Apply Because The Claims And Parties Differ**

Bayer argues that the first-filed rule applies because the parties in the California action and these actions are similar and the claims are similar.  (Bayer Brief at 6-9).  That is not the standard.  As is set forth above, the parties and claims must be duplicative of each other, not simply similar.

---

[3]      Proposed intervenor Stanley relies heavily on cases applying a more liberal standard for the first-filed rule, particularly cases from the Fifth Circuit (Marron Dec., Ex. G at 5-7), a different standard than is used under binding Third Circuit law.  *Kedia*, *id.*

First, while the defendant in all four actions, Bayer Healthcare LLC, is the same, the plaintiffs are all different.  In the California action, the plaintiff is Diana Stanley.  In the New Jersey actions, the plaintiffs are, respectively, Robert Worthington, Dino Rikos, and Troy Yuncker.  Those are different parties, notwithstanding the fact that the California plaintiff might be a member of a class certified in the New Jersey actions, or *vice versa*, if class certification is granted.[4]  "A 'party' to litigation is one by or against whom a lawsuit is brought."  *Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2379 (2011).  An unnamed class member is not a "party" to litigation unless and until class certification has been granted.  *Id.*

One of the purposes of the first-filed rule is to have all issues between the same parties relating to the same controversy decided in one forum.  *EEOC*, 850 F.2d at 974.  "It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals."  *Id.* (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941)).  That concern does not exist here, however, because prior to class certification, no decision in the California action would be binding on the New Jersey plaintiffs, nor would any decision in this Court be binding on the California plaintiff.  *See Smith*, 131 S.Ct. at 2381 ("We could hardly have been more clear that a 'properly conducted class action,' with binding effect on nonparties, can come about in federal courts in just one way—through the procedure set out in Rule 23."); *see also Taylor v. Sturgell*, 553 U.S. 880, 901 (2008) (rejecting concept of "virtual representation" to preclude party from asserting claim previously litigated by another party with the same interest without procedural protections of Rule 23.  "These protections, grounded in due

---

[4]      The only way that the California plaintiff and all of the New Jersey plaintiffs could be potentially part of the same class, and thus be parties to the same suit seeking duplicative relief, is if a national class were certified.  Plaintiffs are pleased that Bayer is willing to concede at this early stage of the litigation that a national class would be appropriate.

process, could be circumvented were we to approve a virtual representation doctrine that allowed courts to create *de facto* class actions at will.")  Plainly, the California plaintiff and the New Jersey plaintiffs are not the same parties, so the first-filed rule does not apply.

Bayer argues that it "should not be forced to defend against the same allegations, regarding the same class of plaintiffs, in multiple concurrent litigation processes."  (Bayer Brief at 12)[5]  In *Smith*, however, the Supreme Court rejected that very argument.

> But this form of argument [that as a matter of policy a defendant should not be subjected to serial class actions] flies in the face of the rule against nonparty preclusion. That rule perforce leads to relitigation of many issues, as plaintiff after plaintiff after plaintiff (none precluded by the last judgment because none was a party to the last suit) tries his hand at establishing some legal principle or obtaining some grant of relief. We confronted a similar policy concern in *Taylor* which involved litigation brought under the Freedom of Information Act (FOIA). The Government there cautioned that unless we bound nonparties a "'potentially limitless'" number of plaintiffs, perhaps coordinating with each other, could "mount a series of repetitive lawsuits" demanding the selfsame documents. But we rejected this argument, even though the payoff in a single successful FOIA suit—disclosure of documents to the public—could "trum[p]" or "subsum[e]" all prior losses, just as a single successful class certification motion could do. As that response suggests, our legal system generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs. We have not thought that the right approach (except in the discrete categories of cases we have recognized) lies in binding nonparties to a judgment.

131 S. Ct. at 2381 (internal citations omitted).

In short, the California plaintiff and the New Jersey plaintiffs are entitled to litigate their claims separately, until and unless the cases are either consolidated or one of the cases is settled

---

[5]     If Bayer is concerned about having to litigate the same issues in multiple forums, then there is an obvious solution to the problem.  It had been Plaintiffs' intention to leave the California action alone.  However, since Ms. Stanley has chosen to intervene in New Jersey, Bayer's conundrum would be solved if Ms. Stanley were allowed to intervene for the purpose of asserting her claims here rather than moving to dismiss.  All of the plaintiffs asserting claims relating to Phillips Colon Health products would then be asserting their claims in the same district before the same judge.  This would eliminate any duplication of effort, eliminate any possibility of inconsistent results, and moot Bayer's motion to dismiss.

or otherwise resolved. Indeed, that is the standard procedure for parallel class actions dealing with the same subject matter. *See In re Diet Drugs*, 283 F.3d 220, 234 (3d Cir. 2002). "The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Taylor*, 553 U.S. at 892-93 (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). The application of the first-filed rule to the facts here would prevent the New Jersey plaintiffs from having their day in court simply because another plaintiff beat them to the courthouse, even before the other plaintiff had his own day in court.

Further, the claims asserted in the four cases are different. Concededly, all of the Plaintiffs generally allege that Bayer has marketed its Phillips Colon Health products as promoting digestive and immune health when, in fact, it provides no such benefit. However, the claims that the different Plaintiffs are asserting are different. Set forth below are the different claims that have been asserted in the different actions.

| Stanley v. Bayer (S.D. Cal.) | Worthington v. Bayer (D.N.J.) | Rikos v. Bayer (D.N.J.) | Yuncker v. Bayer (D.N.J.) |
|---|---|---|---|
| **Class** National and California | **Class** National | **Class** National  **Subclasses** – California purchasers – Illinois purchasers | **Class** National  **Subclasses** – Illinois purchasers |
| **Claims** – California Consumers Legal Remedies Act – California Business and Professions Code § 17200 – Breach of Express Warranty – Money Had and Received, Money | **Claims** – New Jersey Consumer Fraud Act – Breach of Implied Warranty of Merchantability – Unjust Enrichment | **Claims** – New Jersey Consumer Fraud Act – California Consumers Legal Remedies Act – California Business and Professions Code § 17200 – Illinois Consumer Fraud Act | **Claims** – New Jersey Consumer Fraud Act – Implied Warranty of Merchantability – Unjust enrichment – Illinois Consumer Fraud Act |

| Stanley v. Bayer (S.D. Cal.) | Worthington v. Bayer (D.N.J.) | Rikos v. Bayer (D.N.J.) | Yuncker v. Bayer (D.N.J.) |
|---|---|---|---|
| Paid, Unjust Enrichment | | – Implied Warranty of Merchantability<br>– Unjust enrichment | |
| **Relief Sought**<br>– Damages<br>– Enjoining Unlawful Practices<br>– Ordering Corrective Advertising<br>– Attorney's fees | **Relief Sought**<br>– Compensatory Damages<br>– Punitive Damages<br>– Enjoining Unlawful Practices<br>– Ordering Corrective Advertising<br>– Attorney's fees | **Relief Sought**<br>– Compensatory Damages<br>– Punitive Damages<br>–Enjoining Unlawful Practices<br>– Ordering Corrective Advertising<br>– Attorney's fees | **Relief Sought**<br>– Compensatory Damages<br>– Punitive Damages<br>–Enjoining Unlawful Practices<br>– Ordering Corrective Advertising<br>– Attorney's fees |

Thus, while there is some overlap among the claims asserted and the relief sought in the different cases, the different cases do assert different claims, based upon different theories. A decision, for example, on the merits of the California plaintiff's California Consumers Legal Remedies Act claim, or whether a certified class should proceed on that claim, is a different question, and would not be binding on the New Jersey plaintiffs as to the merits of their New Jersey Consumer Fraud claim or whether a certified class should proceed on that claim. *Compare Smith*, 131 S.Ct. at 2376-79 (federal and state courts interpreted their respective class certification rules differently, so federal court ruling denying class certification did not preclude state court from considering class certification under state rule because issues were different.) For purposes of the first-filed rule, all of the different plaintiffs are asserting different claims. Since there are different parties asserting different claims in the California litigation and here, the first-filed rule simply does not apply.

The only case involving a proposed class action that Defendants rely upon is *Catanese v. Unilever*, 2011 WL 1206197 (D.N.J. 2011).[6] That case, though, is distinguishable on two points.

---

[6]     Proposed intervenor Stanley relies upon *no* cases involving proposed class actions. Rather, all of her cases are traditional litigation where the parties are representing their own

First, at the time that the *Catanese* decision was rendered, Judge Walls did not have the benefit of the Supreme Court's decision in *Smith* as to when unnamed class members become "parties" to a class action. Further, Judge Walls did not dismiss the plaintiffs' claims in *Catanese*. Rather, he transferred the action to the first-filed court pursuant to 28 U.S.C. § 1404.[7]  While the defendant in *Catanese* sought to dismiss or transfer as alternative remedies, Bayer is not seeking to transfer this action and, in fact, does not discuss the § 1404 factors.

**c)**      **Bayer Is Attempting To Forum Shop And Plaintiff Shop**

For the reasons set forth above, the first-filed rule does not apply, but assuming *arguendo* that it might, Bayer's motion to dismiss should still be denied. There is a well-settled exception to the first-filed rule where the party attempting to invoke the rule has engaged in inequitable conduct, bad faith, or forum shopping.  *EEOC*, 850 F.2d at 972. It is obvious here that Bayer is attempting to forum shop and plaintiff shop, in an attempt to litigate against the plaintiff asserting the fewest claims, attempting to apply foreign law as the basis for a nationwide class, and to avoid the law that is most favorable to the plaintiff and proposed class. There are a number of factors which, taken together, lead to that conclusion.

- The New Jersey Consumer Fraud Act is "one of the strongest consumer protection laws in the nation." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 16 (1994). All of the New Jersey plaintiffs assert claims under the New Jersey Consumer Fraud Act, while the California plaintiff

---

interests.  (*See* Marron Dec., Ex. G, at 7)  The only way that potentially Stanley would be a party to the New Jersey actions or the New Jersey Plaintiffs would be parties to the California action is by virtue of being members of a certified class in which she does not opt out.  In all of the cases involving non-representative actions, there was at least an overlap of parties in the two actions. That is not the case here.  The California Plaintiff is not a party to any of the New Jersey actions, nor are any of the New Jersey Plaintiffs are parties to the California action.

[7]      For reasons set forth below, Plaintiffs believe that a § 1404 transfer was inappropriate in any event.

does not.  By seeking to eliminate the New Jersey actions, Bayer is also seeking to eliminate, without addressing the merits of, the potentially strongest claims against it.

- California and New Jersey's choice of law rules are different.[8]  *See In re Mercedes-Benz Tele Aid Contract Litig*, 257 F.R.D. 46, 57 (D.N.J. 2009).  However, the application of both California's choice of law rules and New Jersey's choice of law rules would weigh in favor of applying New Jersey law, not California law, where, as here, there is alleged fraud emanating from a company headquartered in New Jersey.  *Id.* at 63-69.  The California plaintiff, who Bayer seeks to litigate against, does not assert any claims under New Jersey law, while the New Jersey plaintiffs do.  Again, by seeking to eliminate the New Jersey plaintiffs under the first-filed rule, Bayer is attempting to eliminate the plaintiffs who are more likely to certify a nationwide class for the claims asserted in their respective complaints.

- The Complaints here are no less detailed that the California complaint (*compare* Dotro Dec., Ex. A), but rather than moving to dismiss based upon Rule 9(b) as Bayer did here, Bayer simply answered the complaint in *Stanley*.  Indeed, filing an answer rather than a motion to dismiss in a consumer fraud class action is the exception.  As a result, rather than being bogged down with motion practice, the plaintiff in *Stanley* has apparently served written discovery requests before participating in that district's mandatory early neutral evaluation conference.  Bayer has effectively permitted Stanley to begin with discovery and to create the appearance that *Stanley* is further along procedurally than these actions.  Further, proposed intervenor Stanley is using the fact that Bayer did not challenge the sufficiency of Stanley's

---

[8]     A district court exercising diversity jurisdiction must apply the choice of law rules of the forum state.  *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 383 U.S. 487, 496 (1941).  Thus, the California court would apply California choice-of-law rules in *Stanley*, while the Court here would apply New Jersey choice-of-law rules.

complaint to argue that the New Jersey Plaintiffs' complaints should be dismissed or stayed because the California action is procedurally more advanced.

- Bayer is headquartered in Morristown, New Jersey, and its Phillips Colon Health team is based in nearby Florham Park.  Rather than seeking to litigate against three plaintiffs on its home turf, it is seeking to litigate against one plaintiff across the country in California.

- The most common procedure where there are multiple actions pending in different districts is a motion before the Judicial Panel for Multidistrict Litigation (the "Panel" or "JPML") for coordination and/or consolidation in a single district pursuant to 28 U.S.C. §1407(a).  *See Smith*, 131 S.Ct. at 2381.  That section provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.

This is a widely used procedure when multiple class actions are filed in different districts, but a motion before the Panel is likely to result in a transfer of all of the actions to New Jersey, not California.

Among the primary factors the Panel considers are where the most cases have been filed and where the defendant is headquartered.  *See, e.g.*, *In re TJX Customer Data Security Breach Litigation*, 493 F.Supp.2d 1382 (J.P.M.L. 2007) (transferring litigation to District of Massachusetts because, *inter alia*, defendant was headquartered in Massachusetts); *In re Circular Thermostat Antitrust Litigation*, 370 F.Supp.2d 1355 (J.P.M.L. 2005) (transfer to district with most cases pending); *In re Ace Ltd. Securities Litigation*, 370 F.Supp.2d 1353 (J.P.M.L. 2005) (same); *In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation*, 368 F.Supp.2d 1354 (J.P.M.L. 2005) (same); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig*, 424 F.Supp. 504, 507 (J.P.M.L. 1976) (venue in New Mexico

appropriate where two of the three actions were already pending in the District of New Mexico); *see also* MANUAL FOR COMPLEX LITIGATION (4th Ed.), § 20.131, at 221 (among the factors considered by the MDL Panel in selecting the appropriate venue are "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of common facts, where cost and inconvenience will be minimized, and the experience, skill and caseloads of available judges.")

Considering that (1) the most cases have been filed in New Jersey, (2) New Jersey is the site of the occurrence of common facts, *i.e.*, Bayer's marketing decisions, and (3) New Jersey is where cost and inconvenience will be minimized, because Bayer's headquarters are in New Jersey and most of the operative witnesses and documents are located there, New Jersey is the most likely court where the Panel would transfer the cases under 28 U.S.C. § 1407.[9]   Bayer is attempting an end-run around the Panel by seeking to dismiss the New Jersey actions under the inapplicable first-filed rule so it may litigate in the forum where it is *least* likely to end up if it follows the appropriate procedures, against only one plaintiff rather than the four who have filed complaints if it sought relief from the JPML.

- Bayer, likewise, does not seek to transfer the New Jersey actions to California under 28 U.S.C. § 1404 or vice-versa.  If it sought transfer under that section, regardless of the result, Bayer would have to litigate against all four plaintiffs, not just one, and the New Jersey Plaintiffs' claim under the New Jersey Consumer Fraud Act would still be extant.  Instead, Bayer

---

[9]   To the best of Plaintiffs' knowledge, the remaining factors would be neutral, although New Jersey has been frequently recognized as having the resources to handle complex multi-district litigation and being geographically convenient. *E.g.*, *In re Insurance Brokerage Antitrust Litigation*, 360 F.Supp.2d 1371, 1373 (J.P.M.L. 2005); *In re Hypodermic Products Antitrust Litigation*, 408 F.Supp.2d 1356, 1357 (J.P.M.L. 2005).  While the California case may be slightly more advanced, with Bayer's connivance, in that written discovery has been served, the Court here is getting more of an education into the parties' claims and defenses because of the instant motion practice.

seeks to litigate against only one plaintiff asserting one set of claims, which are not the strongest. because, among other things, the plaintiff in *Stanley* will apparently seek a nationwide class applying foreign, California law, which is less likely to be certified.

Proposed intervenor Stanley, however, seeks to transfer these actions, without mentioning § 1404. (Marron Dec., Ex. G, at 11-13). In deciding a motion to transfer under § 1404, the Court should consider both the private factors and public factors. *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The burden of establishing a transfer of venue rests on the movant and the plaintiff's choice of venue should not be lightly disturbed. *Id.* The private factors include: plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum) *Id.* The public factors include: the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-880.

Stanley's weighing of the § 1404 factors are both egocentric and limited. (*See* Marron Ex. G at 11-13). Stanley considers the private factors as they relate to her, not as they relate to the New Jersey Plaintiffs, whose case she is seeking to transfer. (*Id.* at 12). As far as the private factors are concerned, it is not relevant that Stanley's chosen forum is California. She is attempting to transfer the New Jersey Plaintiffs' cases *to* California, so it is the New Jersey

Plaintiffs' choice of forum, not Ms. Stanley's choice of forum, which is the relevant factor.  It is Ms. Stanley's burden to overcome the presumption in favor of the three New Jersey Plaintiffs' choice of forum.  She has not.

Bayer's apparent preference is to litigate in California, but, as is set forth above, that preference is to litigate against *only* Ms. Stanley in California.  Bayer has no interest in litigating against the New Jersey Plaintiffs anywhere, for reasons that have to do with forum shopping, and not legitimate concerns about the convenience of the parties.

While each of the Plaintiffs purchased Phillips Colon Health in their respective home states, the claims arose in New Jersey because the misrepresentations in question emanated from New Jersey.  It is much more likely that major corporate decisions as to whether and how to sell a product originated at Bayer's corporate headquarters in New Jersey, not at a manufacturing facility or local sales office in California, as Ms. Stanley suggests.  The fact that California may be the largest market for Bayer's products is disconnected from any relevant consideration Further, Ms. Stanley implicitly concedes that it is more likely that more Bayer witnesses and Bayer documents are located in New Jersey than anywhere else. (Marron Ex. G at 12).  Overall, the private factors weigh in favor of New Jersey, not California.

Further, none of the "public factors" Stanley discusses (*see id.* at 13) are even among the list set forth by the Third Circuit in *Jumara*.  It is not relevant to whether the New Jersey Plaintiffs' case should be transferred that Ms. Stanley's California case is slightly more advanced.  The public factors listed in *Jumara*, rather than those considered by Ms. Stanley, weigh heavily against a transfer from New Jersey to California.  Since Bayer's headquarters are located in New Jersey, any money judgment or injunctive relief the Court might grant would be more easily enforceable in New Jersey.  The fact that the majority of Bayer witnesses should be

13

located in or near Bayer's New Jersey headquarters would make trial easier and less expensive. New Jersey has the strongest public interest in policing the behavior of companies headquartered here. *Mercedes*, 257 F.R.D. at 61, 67, 68; *see also In re Mercedes-Benz Tele Aid Contract Litigation*, 267 F.R.D. 113, 148-49 (D.N.J. 2010). Finally, this Court would be more familiar with the New Jersey Consumer Fraud Act, which is asserted in all of the New Jersey Plaintiffs' complaints, than a California judge. Taken together, the public and private factors weigh heavily against granting a transfer to California.

- Bayer also seeks to dismiss the *Rikos* and *Yuncker* actions based upon the first-filed rule. (Bayer *Rikos* Brief at 13-15; Bayer *Yuncker* Brief at 13-15). By its own terms, the first-filed rule applies to "the subsequent prosecution of proceedings involving the same parties and the same issues already *before another district court*." *EEOC*, 850 F.2d at 971 (emphasis added). The *Worthington*, *Rikos*, and *Yuncker* actions are not pending "before another district court," but are in the same district court before the same judge. The appropriate remedy when there are cases involving common questions of law or fact before the same court is consolidation under Fed. R. Civ. P. 42(a), not dismissal under the first-filed rule. *Alvarez v. Gold Belt, LLC*, 2009 WL 1473933 at *2, 4 (D.N.J. 2009) (citing *Haag v. Janney Montgomery Scott, LLC*, 2007 WL 1240206, at *1 (E.D. Pa. 2007)).

Bayer relies upon *Alvarez* to support its position that the *Rikos* and *Yuncker* complaints should be dismissed under the first-filed rule. In fact, *Alvarez* made no such holding and *denied* the defendant's motion to dismiss based upon the first-filed rule.

*Alvarez* involved a motion by the plaintiff for class certification of a FSLA claim and motion by the defendant to dismiss under the first-filed rule. 2009 WL 1473933, at *1. There was a previously filed FSLA action involving the same group of employees before Judge Irenas,

which also had a motion for class certification pending.  *Id.* at *2.  Judge Hillman denied the class certification motion without prejudice, applying the reasoning of the first-filed rule because it did not make sense to duplicate Judge Irenas' work with respect to whether to certify the same class, and potentially reach a different result.  *Id.* at *3-4.  Judge Hillman also denied defendant's motion to dismiss on the basis of the first-filed rule, *id.* at *4, a fact that Bayer glosses over.  Likewise, Bayer omits the fact that while the subject motions were pending, *Alvarez* and the prior filed action were consolidated for discovery and case management purposes.  *Id.* at 2, 4, n. 10.

In summary, Bayer's assertion that *Rikos* and *Yuncker* should be dismissed in favor of *Worthington* based upon the first-filed rule is frivolous.  The appropriate remedy when two or more actions involving common questions of law or fact are pending before the same court is to consolidate pursuant to Fed.R.Civ.P. 42, not to dismiss all except the first-filed complaint. Bayer's suggestion that the two later-filed actions in this District be dismissed under the first-filed rule is nothing more than another mis-application of the virtual representation doctrine, which the Supreme Court explicitly rejected in *Taylor* and *Smith* on due process grounds.  *See Smith*, 131 S.Ct. at 2381; *Taylor*, 553 U.S. at 901.[10]

Further, unlike in *Alvarez*, all of the three actions pending in New Jersey have been assigned to the same judge.  The reason that Judge Hillman applied the reasoning of the first-filed rule in *Alvarez* was to defer decision on a motion pending before him until Judge Irenas decided a similar, previously filed motion.  Judge Hillman did not, as Bayer would apparently have the Court believe, dismiss the case pending before him.

---

[10]     Dismissing *Rikos*  and *Yuncker* under the first-filed rule would also be a waste of time, since Plaintiffs would simply file an amended complaint in *Worthington* adding the *Rikos* and *Yuncker* plaintiffs and claims, and the litigation would be in exactly the same position as if they were consolidated.

Here, on the other hand, there is no need for Judge Salas to defer in a decision in *Rikos* and/or *Yuncker* in order to see what Judge Salas is going to do in *Worthington* so as to avoid duplicating Judge Salas' efforts in *Worthington* or to avoid the possibility of reaching an inconsistent result with what Judge Salas will decide in *Worthington*.   Unlike in *Alvarez*, there is no risk of duplication of effort because all of the issues in these actions are being presented to Your Honor at the same time, and there is no risk of inconsistent rulings on precisely the same issues being presented at the same time.

- Bayer's position here is the same type of overreaching procedural machinations that the Supreme Court rejected in *Smith*.[11]   *Smith* involved an MDL proceeding centralized in the District of Minnesota relating to the prescription drug Baycol.   There were simultaneous proceedings before the MDL court and in the Circuit Court in West Virginia seeking to certify West Virginia classes.   *Smith*, 131 S.Ct. at 2373-74.   The MDL court ruled first, denying the motion for class certification.   Bayer then moved before the MDL court to enjoin the West Virginia state court from proceeding with the class certification motion based upon the relitigation exception to the Anti-Injunction Act, arguing that the prior decision by the federal district court precluded litigation of what it contended was the same issue before the West Virginia state court.   *Id.* at 2374.   The federal district court granted the injunction.   *Id.*

The Supreme Court held, however, that the injunction was improperly granted.   It held that the issues in the two cases were different, since West Virginia interpreted its Civil Procedure Rule 23 differently than Fed.R.Civ.P. 23.   *Id.* at 2377-79.   Further, and, as discussed above, particularly applicable here, the parties in the federal case and state case were different.   The Court reemphasized that an unnamed putative class member is not a "party" to litigation unless

---

[11]   Bayer's counsel here, Sidley Austin LLP, represented Bayer in *Smith*.

and until a class is certified.  *Id.* at 2379.  Bayer, however, took the internally conflicting position that even though the federal court refused to certify the West Virginia class, the state court West Virginia plaintiff were still bound by the federal denial of class certification because the federal action was a "properly conducted class action" up until the time that class certification was denied.  *Id.* at 2380.  That position was rejected out of hand by the Supreme Court, stating that the theory Bayer was advancing had been previously unanimously rejected in *Taylor*.  *Id.* at 2380-81.

The theory that Bayer is advancing here is the same wine in a different bottle.  Here, Bayer argues that the New Jersey Plaintiffs' complaints should be dismissed under the first-filed rule because another plaintiff in another state is advancing different claims based upon the same wrongful behavior.  The whole purpose of the first-filed rule, however, is to avoid two courts litigating the same issues between the same parties.  It is clear, however, under *Smith* and *Taylor*, that parallel or serial class actions with different plaintiffs are between *different* parties and further, here the different plaintiffs in the parallel class actions are asserting different claims.  Thus, based upon Bayer's own experience in *Smith*, there is no good-faith basis for the application of the first-filed rule here.

Considering all of the points listed above together, it is clear that, even if the first-filed rule were to technically apply, which it does not, Bayer's motion to dismiss under the first-filed rule is a bad faith attempt at forum shopping and plaintiff shopping, which is one of the exceptions to the first-filed rule.  As a result, Bayer's motion to dismiss based on the first-filed rule should be denied.

## II

## BAYER'S MOTION TO DISMISS UNDER
## RULE 12(b)(6) and 9(b) SHOULD BE DENIED

Bayer alternatively argues that Plaintiffs' claims should be dismissed because they are not pleaded with particularity and do not state a claim upon which relief may be granted. For the reasons set forth below, that alternative argument is equally meritless.

**a)**     **Standards For Motion To Dismiss**

A complaint will be dismissed on the pleadings if the plaintiff has failed to plead grounds to his entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a motion to dismiss, the court must assume that all of the factual allegations set forth in the complaint are true, *id.* at 556, and it must draw all reasonable inferences from the pleaded factual allegations in favor of the non-moving party. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

Rule 9(b) requires that plaintiffs plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged and to safeguard defendants against spurious charges of immoral and fraudulent behavior. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

18

> It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them.  Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Id.  Accord Lum v. Bank of America*, 361 F.3d 216, 224 (3d Cir. 2004) ("Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."); *In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198, 216 (3d Cir. 2002) ("Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud.")  When applying Rule 9(b), courts should not focus exclusively on the "particularity" language because doing so fails to take into account the general simplicity and flexibility contemplated by the rules.  *Ford Motor Credit Co. v. Chiorazzo*, 529 F.Supp.2d 535, 538 (D.N.J. 2008) (quoting *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir. 1983)).  The requirements of Rule 9(b) are relaxed in cases of corporate fraud where the factual information is peculiarly within the defendant's knowledge or control.  *Rockefeller Center*, 311 F.3d at 216; *South Broward Hospital District v. Medquist, Inc.*, 516 F.Supp.2d 370, 384 (D.N.J. 2007).  Further, when the transactions are numerous and take place over an extended period of time, less specificity in pleading fraud is required.  *South Broward*, 516 F.Supp.2d at 385.  Rule 9(b) is satisfied if plaintiff adequately pleads the subject matter and nature of each misrepresentation.  *Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, 2007 WL 1756027 at * 11 (D.N.J. 2007).

**b)** **It Is Not Necessary To Plead Ascertainable Loss With Specificity**

Bayer focuses on Paragraphs 11 and 71[12] of Plaintiffs' Complaints, arguing that those paragraphs do not allege the ascertainable loss Plaintiffs suffered with specificity. However, it is not necessary to plead the "ascertainable loss" element of a New Jersey Consumer Fraud claim with specificity. *Maniscalco v. Brother International Corp. (USA)*, 627 F.Supp.2d 494, 503 & n. 8 (D.N.J. 2009) ("Although the loss must be ascertainable, no special specificity with regard to pleading ascertainable loss is required.") (citing *Perkins v. DaimlerChrysler Corp.* 282 N.J.Super. 99, 111 (App.Div. 2006), *Thiedman v. Mercedes-Benz USA LLC*, 183 N.J. 234 (2005), and *Lamont v. Opta Corp.*, 2006 WL 1669019 (App.Div. 2006).[13]

A consumer suffers an "ascertainable loss" when he doesn't get what he paid for. *Union Ink Co. v. AT&T Corp.*, 352 N.J.Super. 617, 646 (App.Div. 2002). An "ascertainable loss" must be "cognizable and calculable" but it "need not yet have been experienced as an out-of-pocket loss." *Thiedemann*, 183 N.J. at 249. In breach of contract or misrepresentation cases, an out-of-pocket loss or loss of value will establish an ascertainable loss. *Id.* at 248. An "ascertainable loss" does not require proof of a "specific amount of actual damages." *Talalai v. Cooper Tire & Rubber Co.*, 360 N.J.Super. 547, 564 (Law Div. 2001) (quotation omitted).

> Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known . . . . When the product fails to measure up [to reasonable expectations based on the representations made], the consumer has been injured; he has suffered a loss.

---

[12]     In *Rikos*, Bayer focuses on Paragraphs 11 and 59 of the Complaint, while in *Yuncker*, the focus is on Paragraphs 11 and 72. The allegations in the three complaints are substantially identical.

[13]     *Franulovic v. Coca-Cola*, 2007 WL 31666953 (D.N.J. 2007), which is relied upon by Bayer, (Bayer Brief at 14) is not to the contrary. In *Franulovic*, Judge Baum did not hold that a plaintiff had to plead ascertainable loss with specificity. Rather, she held that the plaintiffs had not even satisfied the pleading requirements of Rule 8(b) or 12(b)(6). *Id.* at *3, 7-11.

*Id.   Berry v. Mega Brands Inc.*, 2009 WL 233508, at *4 (D.N.J. 2009) (plaintiff satisfied ascertainable loss requirement where "they paid for or acquired toys that Defendants materially and affirmatively represented as age appropriate, and instead received dangerous, defective toys").   An estimate of damages, calculated within a reasonable degree of certainty, will demonstrate an ascertainable loss. *Thiedman*, 183 N.J. at 249.  The "ascertainable loss" do not include non-economic losses.   *Gennari*, 148 N.J. at 612-13. With respect to establishing causation, all that is required is "a causal nexus between the method, act, or practice declared unlawful and the consumer's ascertainable loss." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 332 N.J. Super. 31, 48-49 (App.Div. 2000); *Berry, id.* (plaintiff satisfied the Consumer Fraud Act causation requirement by alleging "they would not have purchased the hazardous toys if Defendant would have disclosed the hazardous nature of the toys").

Plaintiffs have appropriately alleged that they suffered an ascertainable loss for reasons beyond those in the paragraphs cited by Bayer.  For example, in Paragraphs 18, 19, and 28-46[14], Plaintiffs allege that there is no scientific consensus as to whether any probiotic bacteria have any health benefits, and, if so, how much bacteria over what period of time, in order to achieve some health benefit.  Plaintiffs also allege that there is no scientific basis for Bayer to claim, as it does in its Phillips Colon Health advertisements and packaging, that its Phillips Colon Health products provide *any* digestive or immune system benefit. Further, Plaintiff alleges that Bayer's products carry a substantial price tag (Paragraph 47), but the only reason to pay that price is for the alleged health benefits of the product.  (Paragraph 48).  Indeed, there is no other reason why a consumer would purchase the Phillips Colon Health gelatin capsules filled with purportedly

---

[14]     Plaintiffs reference the *Worthington* complaint.   There are substantively identical paragraphs in the *Rikos* and *Yuncker* complaints as well.

21

"probiotic" bacteria.  Plaintiff alleges that Bayer advertised its Phillips Colon Health products as having qualities that it knows the products do not have.  (Paragraph 66)  In short, plaintiffs do not allege that they suffered an "ascertainable loss" simply because they paid for the product. *Compare Parker v. Howmedica Osteonics Corp.*, 2008 WL 141628 at *4 (D.N.J. 2008); (Bayer Brief at 14).  Rather, they allege they suffered an "ascertainable loss" because they did not get what they paid for because Bayer advertised its products has having healthful benefits that they do not have.  *See Union Ink*, 352 N.J.Super. at 646; *Mercedes*, 257 F.R.D. at 73 (in order to prove "ascertainable loss", "Plaintiffs need only show that they 'paid for a product and got something less than was promised'"); *Elias v. Unger's Food Products*, 252 F.R.D. 233, 249 (D.N.J. 2008) ("to satisfy the ascertainable loss element of the NJCFA, plaintiffs need only prove that they paid for a product and 'got something less than what had been promised.'"); *Solo v. Bed, Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. 2007) *and cases cited therein*.

Indeed, in a recent motion to dismiss opinion involving substantially identical allegations involving false advertising of another product containing purportedly "probiotic" bacteria for digestive and immune system health, the court found the complaint's allegations met Rule 9(b), satisfied Article III's requirements, and stated the elements, including "lost money or property" under California consumer law and breach of express warranty.  *Morey v. NextFoods, Inc.*, 2010 U.S. Dist. LEXIS 67990 at, *e.g.*, *5 (S.D. Cal. June 7, 2010) ("Plaintiff's allegations that she purchased GoodBelly products in reliance on NextFood's advertising is sufficient to create standing") and *6 (the terms of the express warranty were properly alleged because "[t]he complaint contains pictures of GoodBelly products that clearly state that GoodBelly 'Supports Healthy Digestion [and] Natural Immunity' and that GoodBelly has 'Clinically Tested Live Cultures.'").

c)      **Plaintiffs' Substantive Claims Are Pleaded With Specificity**

Bayer further contends that Plaintiffs' substantive claims, whether under the applicable consumer fraud statutes, breach of warranty, or unjust enrichment, are likewise not pleaded with sufficient specificity.  Bayer argues that Plaintiffs failed to allege the "'who, what, where, when, and how' of the events in issue" (Bayer Brief at 18), pointing to the very same allegations relating to ascertainable loss which Bayer claims are insufficiently specific.  That contention is baseless.  The allegations setting forth Bayer's representations relating to Phillips Colon Health and how those representations are false are set forth in exacting detail in the complaint.

The elements of a New Jersey Consumer Fraud Act[15] claim are: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss.  *Carton v. Choice Point, Inc.,* 482 F.Supp.2d 533, 535 (D.N.J. 2007) (citation omitted).  The central element in all forms of consumer fraud is the capacity to mislead.  *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 17 (1994).  The acts outlawed by the Consumer Fraud Act are disjunctive.  A violation is complete if an unconscionable practice is proved; a deceptive or fraudulent act need not also be shown.  *State v. Hudson Furniture Co.*, 165 N.J.Super. 516, 520 (App.Div. 1979).  "Unconscionable" is to be interpreted liberally in order to effectuate the public purpose of the Consumer Fraud Act.  *Associates Home Equity Services v. Troup*, 343 N.J.Super. 254, 278 (App.Div. 2001).  The standard of conduct contemplated by the unconscionability clause of the Consumer Fraud Act is the failure to observe "good faith, honesty in fact and observance of fair

---

[15]     While Rikos and Yuncker both assert consumer protection claims in addition to the New Jersey Consumer Fraud Act claims, Bayer does not address the elements of those claims other than to state that they are subject to Rule 9(b).

dealing." *Id.*  Whether a particular practice is unconscionable must be determined on a case-by-case basis. *Id.*

Plaintiffs' allegations with respect to the shortcomings of Bayer's Phillips Colon Health are summarized in the Nature of the Action section of the Complaints.  Bayer claims that its Phillips Colon Health product promotes "digestive health", and a "health immune system" when, in fact, it does not.  In the Factual Allegations section, Plaintiffs expand on the summary contained in the Nature of the Action section.  Plaintiffs allege that the study of probiotic bacteria is in its infancy, and there is presently not even agreement as to what "probiotic" actually means (Complaint, ¶14), no scientific evidence exists as to what "probiotic" bacteria are harmful or helpful, or how much "probiotic" bacteria in what quantities over what period of time would provide particular health benefits. (Complaint, ¶¶ 16-18).  Notwithstanding this lack of scientific information, Bayer labels its Phillips Colon Health products as "probiotic" and claims that the products assist or replace existing natural bacteria to promote digestive and immune system health.  (Complaint, ¶ 19).

Plaintiffs go on to set forth the precise claims made by Bayer in its packaging and website. (Complaint, ¶¶ 20-21).  Plaintiffs even include a picture of the packaging in question. (Complaint, ¶ 23).  Plaintiffs identify an representative example of an offending commercial. (Complaint, ¶ 26).  Plaintiffs also quote the claims Bayer makes on its website.  (Complaint, ¶27).  Plaintiffs then explain in detail why Bayer's claims about Phillips Colon Health are untrue and/or misleading, including the sources of the information establishing the Bayer's claims are untrue.  (Complaint, ¶¶ 28-46).  These allegations are more than sufficient to "inject[] precision and some measure of substantiation into [Plaintiffs'] allegations of fraud." *Seville*, 742 F.2d at 791.  Plaintiffs put Bayer on notice of precisely the statements which they allege to be false and

the true facts relating to those statements.  As a result, Bayer's motion to dismiss based upon Rule 9(b) should be denied.

### III

### PLAINTIFFS' UNJUST ENRICHMENT
### CLAIMS ARE PROPERLY PLEADED

Bayer seeks to dismiss Plaintiffs' unjust enrichment claims for two reasons. First, Bayer argues that Plaintiffs cannot assert unjust enrichment claims as free-standing tort claims, and second that Plaintiffs have failed to allege a direct relationship between themselves and Bayer. Both of those arguments fail.

**a)      Plaintiffs Plead Appropriate Unjust Enrichment Claims**

The elements of an unjust enrichment claim are that 1) the plaintiff expected remuneration from the defendant at the time it performed or conferred a benefit on the defendant and 2) that the failure of remuneration enriched defendant beyond its contractual rights. *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). "In other words, Plaintiffs must show that they got something less than they paid for, and [Defendant] should be required as a matter of equity to make them whole." *Mercedes*, 257 F.R.D. at 72.

Contrary to Bayer's arguments in its briefs, Plaintiffs are not solely asserting tort claims. All of the New Jersey plaintiffs are also asserting breach of implied warranty claims, which are clearly contract claims, since they are asserting claims for the economic loss incurred by purchasing a product that did not do what it claimed to do. *Alloway v. General Marine Industries*, 149 N.J. 620, 627 (1997). "When a product fails to fulfill a purchaser's economic expectations, contract principles, particularly as implemented by the U.C.C., provide a more appropriate analytical framework." *Alloway*, 149 N.J. at 628. Plaintiffs' unjust enrichment claims are pleaded in the alternative to their breach of warranty claims because Plaintiffs did not get what they paid for when they purchased the Phillips Colon Health products, which is entirely appropriate. Unjust enrichment is a proper alternative theory of liability, even if the plaintiff has

an adequate remedy at law.  *See Kaiser Foundation Health Plan, Inc. v. Medquist, Inc.*, 2009 WL 961426 at *12 (D.N.J. 2009); *In re Hypodermic Products Antitrust Litigation*, 2007 WL 1959225 at *16 (D.N.J. 2007); *In re K-Dur Antitrust Litigation*, 338 F.Supp.2d 517, 544 (D.N.J. 2004).

**b)     It Is Not Necessary To Have Direct Dealings
To Assert An Unjust Enrichment Claim**

Bayer also asserts that Plaintiffs' unjust enrichment claims should be dismissed because there were no direct dealings between Plaintiffs and Bayer.  Plaintiffs allege that they conferred a benefit upon Bayer because they bought Bayer's Phillips Colon Health products.  Even though Plaintiffs may have directly purchased the Phillips Colon Health products from a retailer, Plaintiffs still conferred a benefit upon Bayer to the extent that Bayer profited on those sales.

There is no general requirement that a plaintiff deal directly with the defendant in order to assert an unjust enrichment claim.[16]  *K-Dur*, 338 F.Supp.2d at 544-46. Indeed, "the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties." *Benefit Trust Life Insurance Co. v. Union National Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985); *see also In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II)*, 2010 WL 2813788 at *18 (D.N.J. 2010) (following general unjust enrichment standard. "While for a benefit to be conferred, it is not essential that money be paid directly to the recipient by the party seeking restitution, the benefit must nonetheless be received at the expense of the plaintiff")[17].

---

[16]    To the extent that Bayer is attempting to graft onto the elements of an unjust enrichment claim as enunciated by the New Jersey Supreme Court in *VRG* the additional element of direct dealing between the plaintiff and the defendant, that argument is contrary to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), which requires federal courts to follow the decisions enunciated by the highest court of the state with respect to state law claim.

[17]    In *E-350*, most of the unjust enrichment claims were dismissed, though, because the plaintiffs had failed to present any evidence that Ford had received a benefit at the plaintiffs'

The decisions Defendants rely upon do not support the argument that either privity or a directly conferred benefit is an essential element of an unjust enrichment claim under the state common laws at issue here.  As to the lack of privity, the decisions Defendants rely upon do not support its position and at least one refutes, rather than supports, the argument that privity between parties is required to state a common law claim for unjust enrichment.  Similarly, the authority Defendants' rely upon fail to support their broad claim that Plaintiffs cannot state a common law claim for unjust enrichment unless they allege facts showing that they conferred a benefit directly upon each of the Defendants.  Rather, careful examination of the cited authority shows that the courts dismiss such claims only where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant that the defendant ought not keep in equity and good conscience.

*In re Cardizem CD Antitrust Litigation*, 105 F.Supp.2d 618, 669-71 (E.D.Mich. 2000) (applying general unjust enrichment law)(internal citations omitted).

Thus, based upon well-settled principles of unjust enrichment law, it is not necessary for there to be privity between Plaintiffs and Bayer in order for Plaintiffs to assert unjust enrichment claims.  As a result, Bayer's motion to dismiss Plaintiffs' unjust enrichment claims should be denied.

---

expense.  *E-350*, 2010 WL 2813788, at *18, 24-25, 33, 43-44, 50-51, 56, 61, 75, 79.  Not proving one's case, however, is a completely different proposition than what Bayer is advancing here, *i.e.*, that as a matter of law, Plaintiffs have no unjust enrichment claim because they did not purchase directly from Bayer.

**IV**

**BAYER'S MOTION TO DISMISS
PLAINTIFFS' BREACH OF WARRANTY
CLAIMS SHOULD BE DENIED**

Finally, Bayer argues that Plaintiffs' breach of implied warranty of merchantability claims should be dismissed because they did not provide notice to Bayer of their alleged injury. (Bayer Brief at 21).  That contention is meritless.

While notice of alleged injury is an element of a breach of warranty claim against a direct seller, it is not an element of a claim against a remote manufacturer.  *Coyle v. Hornell Brewing Co.*, 2010 WL 2539386 at *6 (D.N.J. 2010) ("this Court has predicted more than once that the New Jersey Supreme Court would not require a buyer to give notice of breach of warranty to a remote manufacturer who is not the immediate seller under Section 2-607 before commencing suit"); *Taylor v. JVC Americas Corp.*, 2008 WL 2242451, at *6 (D.N.J. 2008)(same); *Strzakowlski v. General Motors Corp.*, 2005 WL 2001912, at *3 (D.N.J. 2005) ("This Court has previously predicted that the New Jersey Supreme Court would not require notice under section 2-607(3)(a) in a case against a remote manufacturer who was not the immediate seller of a defective product.  Further, even if notice was required under section 2-607(3)(a), this Court concluded that New Jersey would require a buyer to give notice only to his immediate seller.  Additionally, several cases have held that even if section 2-607(3)(a) requires notice to a remote manufacturer, such a requirement could be satisfied by the filing of a complaint." (internal citations omitted)).

Plaintiffs' breach of warranty claims should not be dismissed because they failed to provide pre-suit notice of Bayer of their damages.  The law is clear that there is no such

requirement and, even if such a requirement existed, it is satisfied by the filing of the complaint.[18]

## CONCLUSION

For the reasons set forth above, Bayer's and Stanley's motions to dismiss should be denied.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiffs

By:____/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated: August 1, 2011

Jeffrey A. Leon
Jamie E. Weiss
Julie D. Miller
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Timothy G. Blood
Thomas J. O'Reardon II
BLOOD HURST & O'REARDON, LLP
600 B Street, Suite 1550
San Diego, California  92101
(619) 338-1100

Adam J. Levitt
John E. Tangren
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
(312) 984-0000

---

[18]     In addition, as alleged in his complaint, Plaintiff Rikos specifically provided Bayer with a notice letter that was attached as Exhibit A to the complaint which described e.g., Bayer's misrepresentations about Phillips Colon Health, as well as the injuries suffered by Plaintiff Rikos.  *See* Rikos Complaint, ¶ 65 and Ex. A.

Jim S. Calton, Jr.
CALTON LEGAL SERVICES, SP
322 South Eufaula Avenue
Eufaula, Alabama 36072

Joseph J. Siprut
SIPRUT PC
122 South Michigan Avenue, Suite 1850
Chicago, Illinois  60603
(312) 588-1440